IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 28, 2015 Session

**STATE OF TENNESSEE v. DAVID HUGH CRUMLEY**

**Appeal from the Criminal Court for Claiborne County**
**No. 2012-CR-1216     E. Shayne Sexton, Judge**

_____

**No. E2013-02373-CCA-R3-CD – Filed July 20, 2015**

_____

The Defendant, David Hugh Crumley, pled nolo contendere to two counts of vehicular homicide and received an effective eight-year sentence under the terms of the agreement. Thereafter, the trial court denied any form of alternative sentencing based upon the nature and circumstances of the offenses combined with the Defendant's lack of remorse and his past criminal history involving alcohol and drugs. The Defendant appeals, arguing that he is a suitable candidate for alternative sentencing pursuant to the statutory considerations outlined in Tennessee Code Annotated section 40-35-103(1)(A)-(C). Following our review, we discern no abuse of discretion in the trial court's alternative sentencing decision. Accordingly, the judgments are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, for the appellant, David Hugh Crumley.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Jared R. Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

Following a November 5, 2011 automobile wreck, the Defendant was charged with two counts of vehicular homicide as the proximate result of his intoxication, a Class B felony, and one count of driving under the influence ("DUI"), a Class A misdemeanor. See Tenn. Code Ann. §§ 39-13-213, 55-10-401. He entered a nolo contendere plea of

guilty to two counts of vehicular homicide on June 17, 2013, and the DUI charge was dismissed.[1] Pursuant to the terms of the agreement, he received concurrent terms of eight years as a Range I, standard offender for both counts of vehicular homicide. Only the manner of service was left for the trial court's determination.

A sentencing hearing was held on September 23, 2013. The presentence report was entered as an exhibit and provided details surrounding the events. The information in the report about the crash was taken verbatim from a Tennessee Highway Patrol Critical Incident Response Team Reconstructionist's Report completed by Trooper James Fillers. After Trooper Fillers examined "all known physical evidence" and reviewed the witnesses' accounts of the automobile collision, he made the following conclusions.

On Saturday, November 5, 2011, at approximately 7:39 p.m., the Defendant was operating a 2010 Chevrolet Malibu heading south on State Route 63 in Claiborne County at a rate of sixty-eight miles per hour. The posted speed limit was fifty-five miles per hour. Ronald P. McNew was traveling in the opposite direction, north of State Route 63, in his 2011 Toyota Highlander, at a rate of 49 miles per hour, and was accompanied by his wife Wilma McNew, who was in the passenger seat. Ashley N. Fultz was driving behind the McNews in her 2008 Ford Escape. All individuals were wearing their seatbelts according to Trooper Fillers's report.

The report further stated,

> The Chevrolet crossed the center line and collided with the Toyota head-on in the northbound lane. The Chevrolet and Toyota entered a clockwise rotation. The Ford collided with the right rear of the Toyota and then collided with the left rear of the Chevrolet. The Chevrolet entered a counter clockwise rotation and came to an uncontrolled final rest in the center of the roadway facing north. The Toyota came to an uncontrolled final rest in the center of the roadway facing north. The Ford came to a controlled final rest on the shoulder of the northbound lane.

---

[1] At the outset, we note that there appears to have been much confusion regarding the Defendant's indigency status and preparation of the transcripts once the Defendant's notice of appeal was filed in October 2013. On March 27, 2014, the trial court found the Defendant indigent for purposes of appeal and ordered preparation of the sentencing hearing proceedings. This court later returned the appellate record to the trial court clerk for correction of defects therein. Upon motion of the trial court clerk, the late-filed record was finally accepted by this court on October 28, 2014. Although a transcript of the guilty plea submission hearing is absent, we believe that the record is sufficient to conduct a meaningful review of the trial court's sentencing decision. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012).

Mr. McNew died on the scene, and Mrs. McNew was transferred to Claiborne County Hospital, where she died from her injuries sustained in the crash. The Defendant was transported to University of Tennessee Medical Center, where he received treatment.

The Tennessee Bureau of Investigation conducted blood alcohol tests and drug screens on the Defendant and the other two drivers. No alcohol was detected in the Defendant's blood, but the "toxicology results were positive for Etomidate, Doxylamine less than .05 ug/ml, Oxycodone .14 ug/ml, Midazolam 39.2 mg/ml, and Alprazolam 77.8 ng/ml." All results were negative for both Mr. McNew and Ms. Fultz. Based on this information, Trooper Fillers determined, "It is my opinion that failure to keep in the proper lane of travel, speeding and impaired driving, on behalf of [the Defendant], are the primary contributing factor[s] to the cause of this crash."

Angela Brooks and Karen Bullins both testified about the impact of the loss of their mother and father on themselves and their entire family. They described their parents as loving, faithful, loyal, hard-working, wonderful, generous, and dedicated to their family. Their mother was a breast cancer survivor, and their father was a Vietnam combat veteran, who had received a purple heart. Over 1,500 people attended their parents' funeral on a cold and rainy day, according to the two women. They requested the maximum punishment for the Defendant.

The Defendant's father, Jeffrey Crumley, testified that he and his family were extremely sympathetic towards the McNews's family and "wished [they] could bring them back." He confirmed that the Defendant had insurance coverage when the collision occurred and that the insurance company paid $200,000.00 under the policy.

The Defendant suffered extensive injuries during the crash, according to Mr. Crumley, and due to these injuries, the Defendant now lived with his parents. Mr. Crumley testified that these injuries included: "mild short term memory" impairment; "bad" headaches; depression; vision trouble; and head trauma. The Defendant, Mr. Crumley said, still required ongoing treatment for some of his injuries and was unable to work, but he could drive a vehicle. Mr. Crumley added that the Defendant's "mind [was] not good" and that he behaved "like a child" when he was in public.

Mr. Crumley acknowledged that the Defendant had been in legal trouble for alcohol-related offenses and that the Defendant had admitted to previously using marijuana. However, Mr. Crumley clarified, "That was back when he was younger before he straightened his life up, made the nurse." According to Mr. Crumley, the Defendant loved his job as a nurse, enjoying "talking to the patients and stuff[.]"

Jacqueline Robinson, a lifelong friend of the Defendant's, testified that she was an elementary school teacher and that the Defendant sometimes substituted for her in her classroom. She conveyed stories of the many personal things that the Defendant had done for her, like checking in on her, taking care of her cat, and buying her child necessities. The Defendant, according to Ms. Robinson, had expressed remorse, even coming to her house the week before the hearing and crying in front of her and her husband, saying "how sorry he felt for what he had done to the family and how sorry he felt that he couldn't bring these people back." That day he also had "actually experienced empathy" by trying to put himself in the victims' family's shoes and feeling devastated by the thought of that loss.

The Defendant was a twenty-eight-year-old, single male at the time of the sentencing hearing. He could not recall any details about the November 5, 2011 collision. Due to his many injuries from the wreck, he was hospitalized for almost three months, and then upon his release, he continued with outpatient therapy for two more months. He reported multiple bone fractures and "a brain injury to the front and back" and stated that he still suffered from short term memory loss and poor vision, tired easily, and had problems sleeping. He still saw doctors at Patricia Neal Rehabilitation Center approximately once every six weeks, a psychiatrist once a week, and an eye doctor as needed. Regarding any medications, the Defendant stated that he took Depakote for his seizures and Prozac for depression. He described changes in his personality since the wreck, saying that he was a "loner" now, even at home, and that he did not "really go out anymore like [he] used to."

When asked if he had consumed alcohol since the crash, the Defendant said that he had "drank like once at the lake . . . when [he] was with [his] parents[,]" drinking only maybe a beer or two. He testified that, since November 2011, he had taken no drugs other than his prescribed medications. When asked if he had anything to say to the victims' family, he replied,

> I really wish that I could go back and change November 5th, 2011, and I wish there was something I could do for the family so they didn't have to deal with this loss, and I'm truly sorry. I can't even begin to imagine what any of you all feel because I've tried to step out of my shoes and put myself in your all's shoes and tried to see what you all are feeling, and I can't even begin to imagine, and I'm truly very sorry, and I just hope I never have to experience what you all are going through. I know that's bad to say, but I can't imagine how painful it is for you all and how much you have to miss the two loved ones that you all lost. And I'm once again very sorry.

Regarding the Defendant's prior criminal history, he had two speeding tickets— one in Bell County, Kentucky, in 2004; and the other in Lee County, Virginia, in July 2009, for driving at a rate of fifty-one miles per hour in a thirty-five-mile-per-hour zone. On August 26, 2005, also in Lee County, Virginia, the Defendant was charged with driving while impaired and was later convicted of the amended charge of reckless driving. The Defendant admitted that he was under the age of twenty-one when he was found as a passenger in a parked car with the keys in the ignition on this occassion. He was also convicted of possession and distribution of intoxicating liquors by persons under the age of twenty-one for this August 26, 2005 event. In Hancock County, Tennessee, the Defendant was convicted of public intoxication on May 13, 2009, although originally charged with DUI by consent. The Defendant admitted that both he and the driver were drunk. He stated that the driver "was a lot less under the influence than what [he] was" but agreed that this did not "somehow make that situation safe[.]"

Regarding his educational and employment history, the Defendant graduated from Thomas Walker High School in Virginia in 2003. According to the presentence report, the Defendant worked as a sales associate at Belk Department Store in 2004 and at Greenfield Assisted Living of Oak Ridge in 2011 as a nurse. Between 2004 and 2011, the Defendant went to school and received his Licensed Practical Nursing Degree, initially going to school in Tennessee but later returning to Virginia, where he lived with his parents. According to the Defendant, he also worked at Farmers and Miners Bank in Pennington Gap, Virginia, and at Claiborne County Hospital during these years; however, he could not explain why these additional jobs were not listed in the presentence report.

The Defendant was asked about the toxicology report in this case. He admitted that he took Oxycodone that day, but he could not recall if he obtained it "from someone that had a prescription" or "from an old prescription" of his. He explained that his prescription for Oxycodone "was just out of date[,]" although he acknowledged that he did not have a valid prescription at the time of the car crash. He also admitted that he had obtained Oxycodone from "someone else other than [his] prescription" in the past, even with the knowledge that it was illegal to do so. The Defendant agreed that he "had a problem of using Oxycodone in the past[.]" According to the Defendant, his last use of marijuana occurred at the age of twenty-five.

The Defendant was asked if he had frequented any bars after the automobile wreck. He admitted going to a bar and grill with his parents called "Bubba Bruce," also to a bar in Gatlinburg called "Puckers" with several of his friends, and to a bar in Cumberland Gap then known as "The Tavern." He stated,

Just because you go to a place that serves alcohol doesn't mean you are drinking alcohol or that you are even driving. And I'm of age, I'm 28

-5-

years old.  If I want to consume an alcoholic beverage, that's not against the law.  It is if I want to go out and drive, yes, but I don't drive under the influence.  Those bars that I've been to, my car has been sitting in my driveway at home.  It's when I've been picked up by somebody and ridden with somebody, so I didn't feel that there was a problem with if I wanted to go out into a public place and me being of age to have a drink if I wanted one and then go get in the passenger seat of a car and go home.

He agreed that this behavior probably was not "an appropriate display of remorse" for someone awaiting sentencing after entering nolo contendere pleas to killing two people while driving under the influence.  He then clarified, "I also know that unfortunately, there is nothing that I can do to bring them back.  There is nothing I can do to change what happened.  And I mean, I don't—am I supposed to just stop my life and just not do anything for the rest of my life?"

The trial court then heard arguments from counsel and rendered its decision.  At the outset of its ruling, the trial court noted that the Defendant was convicted of Class B felonies and, therefore, was not considered a favorable candidate for alternative sentencing.  The trial court then denied any form alternative sentencing, reasoning as follows:

I understand the purpose of entering a nolo contendere plea based on the testimony here today and also what led up before.  That, in and of itself, is a legal maneuver that really has no bearing on the [D]efendant's suitability for alternative sentencing.  However, the other statements that were made before this [c]ourt are somewhat appalling.

Remorse can come in a lot of different forms.  The [D]efendant clearly stated his thoughts to the family, and he did it in a somewhat compelling way.  That's not nearly as troubling to the [c]ourt as the [D]efendant's statement that his life should just go on, he can't do anything about what he has done.  That directly goes to the point of his suitability for alternative sentencing.  If wrecking while under the influence of narcotics and the taking of two lives cannot steer someone away from a particular act, I don't know what can.  This . . . set of facts is troubling on any scale, but to have the [D]efendant testify that, well, you know, life goes on.  Sometimes it doesn't.  Sometimes it doesn't.  Some acts are so egregious and the taking of innocent lives—by all the presentence investigation, the McNews, every—there was no fault, there was no culpability on their side, there was no medication, there was nothing that pointed in their direction as to . . . their being part of a problem here.  Everything pointed directly at the [D]efendant.  Couple that with the situations in the past dealing with

smoking [m]arijuana, the charges in other jurisdictions that led to reduced—I don't know what happened and I'm not gonna second guess that, but I see some failure in the legal system there. I don't know if it could have prevented this, but it might have taught the [D]efendant, possibly led him away from this particular conduct.

However, based on the previous behaviors of the [D]efendant, the acts that occurred here that led to the death of these two individuals and the statements made here in [c]ourt, I find that he is a very poor candidate for alternative sentencing . . . .

This timely appeal followed.

ANALYSIS

On appeal, the Defendant takes exception to the trial court's complete denial of any alternative sentence. Specifically, the Defendant argues that the statutory criteria of Tennessee Code Annotated section 40-35-103 are not met because "his [criminal] history is of misdemeanors, long in his past"; because "[t]he crime itself—involving death—cannot be depreciated" and, therefore, "confinement does not provide an 'effective deterrence'"; and because "measures less restrictive than confinement" have never been applied to the Defendant, much less "unsuccessfully" or "recently." He concludes that the trial court should have granted him "probation, or, at worst, split confinement." The State responds that the trial court properly exercised its discretion when it ordered the Defendant to serve his eight-year sentence in confinement.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). However, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

Regardless, an offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of certain specified offenses. See Tenn. Code Ann. § 40-35-303(a). While the trial court was required to automatically consider probation as a sentencing option, see Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). It is the defendant's burden to establish his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Again, the consideration of favorable candidacy for alternative sentencing extends to a defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony[.]" Tenn. Code Ann. § 40-35-102(6)(A). When a defendant is to be considered a favorable candidate, the State can overcome such consideration with "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6)(A). Because the Defendant was convicted of two Class B felonies, he is not to be considered a favorable candidate for alternative sentencing. Moreover, as noted above, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing, and it is a defendant's burden to establish his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citation omitted). Importantly, we observe that the State had no burden to justify confinement in this case.

Here, the trial court based its denial of any alternative sentence upon the following grounds: the nature and circumstances of the offenses, the Defendant's lack of remorse, and the Defendant's past criminal behavior. This court has previously stated that the nature and circumstances underlying the criminal conduct may alone give rise to the denial of probation or another alternative sentence. See Tenn. Code Ann. § 40-35-210(b)(4); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). When imposing confinement based solely upon the seriousness of the offenses, the trial court must first determine if "'the circumstances of the offense[s] as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" State v. Zeolia, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996) (quoting State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds, Hooper, 29 S.W.3d at 9-10)). This principle has been codified in section 40-35-103(1)(B), which considers confinement to avoid depreciating the seriousness of the offense. State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991); see also Fletcher, 805 S.W.2d at 787. Sentencing decisions should not, however, turn on a generalization of the crime committed, such as the fact that a death occurred. See Bingham, 910 S.W.2d at 454-55. In this case, the trial court made the following descriptive statements about the nature and circumstances of these events: "wrecking

while under the influence of narcotics and the taking of two lives"; "this set of facts is troubling on any scale"; and "[s]ome acts are so egregious and the taking of innocent lives . . . ." The trial court further noted that the McNews were not found to be at fault in the car crash in any way and that "[e]verything pointed directly at the [D]efendant."

However, the trial court did not exclusively rely on the seriousness of the offenses in its decision to impose confinement. The trial court further found that the nature and circumstances underlying the offenses, coupled with the Defendant's "somewhat appalling" statements at the sentencing hearing, were indicative of a lack of remorse and bore directly on his suitability for an alternative sentence. One such statement was, "[H]is life should just go on, he can't do anything about what he has done." The trial court also observed that if this automobile collision could not "steer [the Defendant] away from a particular act," then it was unsure what punishment could, apparently referring to the Defendant's behavior of frequenting bars while awaiting sentencing in this matter. Lack of remorse is sufficient evidence by which a trial court may deny an alternative sentence. State v. Smith, 735 S.W.2d 859, 864 (Tenn. Crim. App. 1987).

Finally, the trial court discussed the previous criminal behavior of the Defendant in addition to the above two considerations. The trial court noted that the Defendant had a "past dealing with smoking [m]arijuana" and several alcohol-related convictions in other jurisdictions. The Defendant submits that because of the old age of this behavior and the misdemeanor classifications of his convictions, the trial court should not have considered this behavior. However, the Defendant was still young at time of the sentencing hearing, being only twenty-eight years old, and these convictions were extremely relevant due to their similarity to the crimes at issue—speeding, intoxication, and reckless driving. Moreover, the Defendant admitted last smoking marijuana as recently as twenty-five years of age. The trial court also noted that, despite these previous run-ins with the law, the Defendant continued to drive while under the influence, which resulted in this crash that took two "innocent lives." Based upon these observations, the trial court concluded that the Defendant was "a very poor candidate for alternative sentencing[.]" The Defendant's history of criminal convictions and criminal behavior lends support to the denial of an alternative sentence.

The trial court followed the statutory sentencing procedure, properly weighing the factors and principles in denying alternative sentencing, and placing its reasoning for denying an alternative sentence on the record. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's denial of alternative sentencing. See, e.g., State v. Dennis Neil Bizzoco, 2011 WL 743404, at *4-5 (Tenn. Crim. App. Mar. 3, 2011) (affirming the denial of an alternative sentence for a defendant who pled guilty to vehicular homicide by intoxication, reckless homicide, and vehicular assault, and received an effective sentence

of eight years pursuant to the agreement); <u>State v. Keaton M. Guy</u>, No. E2007-01827-CCA-R3-CD, 2008 WL 5130729, at *12-13 (Tenn. Crim. App. Dec. 8, 2008) (affirming the denial of full probation for a defendant who entered an open plea to reckless vehicular homicide and aggravated assault and received an effective four-year sentence following a sentencing hearing).

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE